# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvanians for Union Reform,   :
                       Petitioner   :
                                :
              v.            :    No. 1852 C.D. 2015
                                :    Argued: March 7, 2016
Pennsylvania Department of State,   :
                   Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER             FILED: May 23, 2016

Pennsylvanians for Union Reform (PFUR), a nonprofit corporation, petitions for review of a Final Determination of the Office of Open Records (OOR), which denied in part and dismissed as moot in part PFUR's appeal from the decision of the Pennsylvania Department of State (Department) granting PFUR's Right-to-Know Law (RTKL)[1] request (Request) for voter registration information in accordance with what is commonly referred to as the Pennsylvania Voter Registration Act[2] (Voter Registration Act) and the Department's regulations thereunder, which have different access provisions than the RTKL.[3] PFUR argues that a requester may use whatever law it deems appropriate to access public

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] 25 Pa. C.S. §§ 1101-1906.

[3] Bureau of Commissions, Elections and Legislation Regulations, 4 Pa. Code §§ 141.1-191.4.

records and, where it requests records pursuant to the RTKL, the agency must process the entire request under the access provisions of the RTKL. Because the RTKL specifically provides that the RTKL does not apply where access to the records is otherwise provided by law, we affirm.

## Background

On June 15, 2015, PFUR submitted a standard request form to the Department, pursuant to the RTKL and "not . . . under any other law," along with an affirmation[4] seeking voter registration and candidate information. (R.R. at 7a, 8a, 13a.) The request expressly stated that PFUR was not seeking the public information list, known as the full voter export. (R.R. at 11a.) PFUR sought four specific items in the Request,[5] however, only the following three items remain at issue in this appeal:

> (1) [Q]uery and extract the following information from the SURE system and send it to PFUR in manipulable electronic database medium: The full names and associated home or mailing addresses and full dates of birth of all Public Registered Voters in all counties in

---

[4] In the affirmation, PFUR's President, on behalf of PFUR and subject to the penalties of Section 4904 of the Crimes Code, 18 Pa. C.S. § 4904, affirmed "that any information obtained from the records requested . . . will not be used for commercial or other purposes, except purposes related to elections, political activities[,] and law enforcement" and "that PFUR will not publish any of the released information on the Internet." (R.R. at 13a (footnote omitted).) Despite its contents, the affirmation was not completed "on a form prescribed by the Department." 4 Pa. Code § 183.14(b)(5).

[5] PFUR also requested copies of "Candidate Affidavits for the six (6) remaining candidates in the race for Pennsylvania Supreme Court (David Wecht, Christine Donohue, Kevin M. Dougherty, Anne Covey, Michael George, [and] Judith F. Olson)." (R.R. at 12a.) However, the OOR dismissed as moot the appeal as to these affidavits because the Department provided them to PFUR during the course of the appeal. (Final Determination at 7, R.R. at 87a.) PFUR does not challenge this on appeal.

2

the Commonwealth of Pennsylvania who have a first name of "Barbara", "David", "James", "Jennifer", "John", "Linda", "Lisa", "Mary", "Michael", "Robert", "Susan", or "William" [(Requested Item 1)];

. . .

(2) [S]end the following information to PFUR in manipulable electronic database medium: The Philadelphia County Voter List [(Requested Item 2)];

. . .

(3) [A] screen shot/screen print copy of the following identified citizens' voter registration information in the SURE system (i.e. name/address/date of birth/political party registration) [of]: . . . Thomas W. Scott [(Name, Home Address, and Date of Birth),] . . . Wagdy V. Abdelshaheed [(Name and Birth Year),] . . . Korri J. Brown [(Name and Birth Year), and] . . . Richard E. Burridge [(Name and Zip Code) (Requested Item 3)].

(R.R. at 11a-12a (footnote omitted).)

Pursuant to Section 902(b)(2) of the RTKL, 65 P.S. § 67.902(b)(2), the Department, via letter to PFUR, extended its deadline to respond by 30 days due to the extent and nature of PFUR's Request and indicated that it would include the estimated or actual fees in its subsequent response once the records became available. (R.R. at 21a-22a.) On July 22, 2015, the Department granted PFUR's request, provided that PFUR complete the Department's "Request for Voter Lists from the Department of State" form, which requires the requester to affirm that the records would not be used for purposes unrelated "to elections, political activities and law enforcement," and obligates the requester to present the Department with proper identification and to pay the applicable fee of $20.00 before receiving the records, as mandated by the Voter Registration Act and the Department's regulations. (R.R. at 25a-28a.) Upon its receipt of the required information from PFUR, the Department stated that it would process the Request pursuant to

3

Sections 306 and 3101.1 of the RTKL, 65 P.S. §§ 67.306, 67.3101.1, and provide a copy of the public information list, known as the full voter export, to PFUR. (R.R. at 25a-26a.) In its response, the Department informed PFUR that the full voter export contains "all of the information sought in a fully manipulated electronic format wherein [PFUR] can perform [] simple quer[ies] for any . . . information [it] seek[s]." (R.R. at 26a.)

On July 28, 2015, PFUR appealed to the OOR challenging the Department's "grant" of access to the requested records.[6] The OOR invited the parties to supplement the record and directed the Department to notify third parties of their ability to participate in the appeal. Neither party requested a hearing. In its appeal, PFUR argued, *inter alia*, that as a corporation, it could not produce the proof of identification required by the Voter Registration Act and objected to any third party notification. (R.R. at 37a-38a.) On August 6, 2015, the Department timely submitted a Brief in Opposition to Appeal and the affidavit of Jonathan Marks, Commissioner of the Bureau of Commissions, Elections and Legislation. In response, PFUR submitted its Counter-Statement of the Issues. PFUR then sent its "final brief" to the Department, in which it argued, generally, that the Department acted arbitrarily in following the requirements for access set forth in the Voter Registration Act and the Department's regulations. (R.R. at 80a.)

In his affidavit, Commissioner Marks attested that the full voter export, otherwise known as the public information list, which is available electronically, "contains all of the information [requested by PFUR]," and "[t]he Department regularly makes this list available pursuant to the applicable election and voter

---

[6] PFUR appealed the Department's decision through two emails sent on July 28, 2015; the first at 3:50 p.m. and the second at 5:49 p.m. (R.R. at 35a-38a.)

4

registration laws and regulations." (R.R. at 67a.) Commissioner Marks described the purposes for which voter records are conditionally made available to the public and the unique nature of these records, and he acknowledged the General Assembly's enactment and the Department's promulgation of "reasonable safeguards to ensure that [voter registration] information is not used improperly." (R.R. at 67a.)

The OOR issued its Final Determination denying in part and dismissing as moot in part PFUR's appeal with regard to the requested voter registration information and the Department's conditional grant of access to those records. (R.R. at 81a, 85a-87a.) The OOR determined that "the Department [] established that it may withhold the responsive records [(Requested Item 1 and 2)] unless and until [PFUR] complies with the applicable provisions of the [Voter Registration] Act . . . and the Department['s] regulation[s.]" (R.R. at 86a (citations omitted).) Relying on Commissioner Marks' affidavit, the OOR found that because Requested Item 3 was "available through 'publicly accessible electronic means,' the Department [] met its obligations under the RTKL," and denied the appeal as to that item. (R.R. at 86a (citing Section 704(a) of the RTKL, 65 P.S § 67.704(a)).) On September 9, 2015, PFUR petitioned for reconsideration of the OOR's Final Determination. The OOR did not act on the petition for reconsideration. This petition for review by PFUR followed.[7]

---

[7] In reviewing a final determination of the OOR, this Court "independently reviews the OOR's orders and may substitute its own findings of facts for [those] of the agency." Bowling v. Office of Open Records, 990 A.2d 813, 818 (Pa. Cmwlth. 2010) (en banc), aff'd, 75 A.3d 453 (Pa. 2013). As we are not limited to the rationale offered in the OOR's decision, we enter narrative findings and conclusions based on the evidence, and we explain our rationale. Id. at 820. Our scope of review on a question of law under the RTKL is plenary. Allegheny County Department of Administrative Services v. A Second Chance, Inc., 13 A.3d 1025, 1029 n.3 (Pa. Cmwlth. 2011).

On appeal, PFUR argues that the OOR erred in affirming the Department's decision and misinterpreted Section 3101.1 of the RTKL because no conflict exists between the RTKL and the Voter Registration Act. Since PFUR requested the items at issue under the RTKL and followed all of the RTKL's statutory requirements for obtaining those documents, PFUR contends that the Department "may not dictate in an arbitrary or discriminatory fashion what law a requester may use to access public records" or "condition access to such records on compliance with a different statute," and "the OOR cannot enforce stricter access provisions of another law or regulation." (PFUR's Br. at 22, 24, 26.) PFUR contends that the General Assembly did not intend the Voter Registration Act and corresponding regulations to be the exclusive means by which requesters may access that information, and therefore, the Department may not condition access to the requested voter registration information upon PFUR's compliance with the Voter Registration Act and the Department's regulations.

PFUR also argues that the OOR abused its discretion by determining that the Department granted access to the specific records requested by PFUR. Specifically, PFUR asserts that the Department did not grant access to the records requested because it "attempt[ed] to narrow PFUR's request to records [] available only under the Voter Registration Act." (PFUR's Br. at 16.) PFUR maintains that under the RTKL, the Department must perform the query PFUR requested, provide **only** the specific records resulting from that query, and those results had to be in the medium requested by PFUR. (PFUR's Br. at 17-18.)

In response, the Department argues that the RTKL, the Voter Registration Act, and the Department's regulations must be construed together. The Department argues, *inter alia*, that "the method of accessing the [requested voter

6

registration] information are 'otherwise provided by law,'" and that Section 1404 of the Voter Registration Act, 25 Pa. C.S. § 1404, and Section 183.14 of the Department's regulations, 4 Pa. Code § 183.14, govern that **access**. (Department's Br. at 12.) The Department contends that, pursuant to Sections 306, 701, 703, and 3101.1 of the RTKL, the RTKL "specifically preserved the provisions of other laws and regulations that speak to the availability of agency records."[8] (Department's Br. at 10-11.) Specifically, the Department maintains that where the RTKL conflicts with the access provisions of another state law, the state law supersedes the RTKL. (Department's Br. at 11, 14-15.) The Department also argues that it complied with the Request by agreeing to provide PFUR with access to the requested information in a manipulable electronic format, known as the full voter export, in accordance with the Voter Registration Act and the Department's regulations. Essentially, PFUR could receive the information it requested by completing the Department's form,[9] showing identification, and paying $20.00.

---

[8] 65 P.S. §§ 67.306 (providing that "[n]othing in th[e RTKL] shall supersede or modify the . . . nature of a record or document established in . . . State law, regulation or judicial order or decree"); 67.701(a) (providing that "[**u**]**nless otherwise provided by law**," public record "shall be accessible for inspection and duplication in accordance with th[e RTKL]" (emphasis added)); 67.703 (providing that neither a reason nor an intended use of the records needs to be included in a written request "**unless otherwise required by law**" (emphasis added)); and 67.3101.1(see *infra* p. 9).

[9] The Department's form requires that individuals inspecting or copying the public information list provide their name, address, telephone number, a photocopy of proof of identification, and their signature on the affirmation that the information "will not be used for commercial or other purposes, except purposes related to elections, political activities and law enforcement," and that the information will not be published on the Internet. (R.R. at 28a.)

7

## Discussion

This case involves the interpretation and interplay between the RTKL, the Voter Registration Act, and the Department's regulations. "[W]hether the RTKL applies to PFUR's request [for access to voter registration information] in the first instance represents a purely legal issue which this Court is authorized to decide[,]" and "[i]n analyzing this matter, we are guided by the Statutory Construction Act of 1972." McCord v. Pennsylvanians for Union Reform, ___ A.3d ___, ___ (Pa. Cmwlth., No. 87 M.D. 2014, filed March 18, 2016), slip op. at 7-8, 12 (quoting Pennsylvania Gaming Control Board v. Office of Open Records, 103 A.3d 1276, 1284 (Pa. 2014)) (footnote omitted). Pursuant to the Statutory Construction Act of 1972,[10]

> '[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.' 1 Pa.C.S. § 1921(a). To that end, the general rule is that '[w]ords and phrases [are to] be construed . . . according to their common and approved usage[,]' Id. § 1903(a), and '[e]very statute [is to] be construed, if possible, to give effect to all its provisions.' Id. § 1921(a). The Act further provides, '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' Id. § 1921(b). Only where the operative statutory language is not explicit in conveying the intent of the General Assembly should courts look beyond the General Assembly's words to ascertain its intent. In doing so, as it becomes necessary, the Act provides that courts may ascertain such intent by looking to several enumerated considerations, including, *inter alia,* '[t]he mischief to be remedied [,]' '[t]he object to be attained[,]' and '[t]he consequences of a particular interpretation.' Id. § 1921(c). . . . Moreover, the Act explains that parts of statutes which are in *pari materia, i.e.,* statutory parts which relate to the same persons or things, are to be construed together wherever possible. Id. § 1932.

---

[10] 1 Pa. C.S. §§ 1501-1991.

8

<u>Pennsylvania Gaming Control Board</u>, 103 A.3d at 1284 (emphasis in original).

Having set forth the above principles, we turn to the relevant RTKL provision. Section 3101.1 of the RTKL provides that "[i]f the provisions of th[e RTKL] regarding **access to records conflict** with any other . . . State law, **the provisions of th[e RTKL] shall not apply**." 65 P.S. § 67.3101.1 (emphasis added). Thus, under the plain language of the RTKL, we look to the access provisions of the Voter Registration Act and the Department's regulations to determine whether the RTKL access provisions are in conflict.

Section 1404 of the Voter Registration Act, 25 Pa. C.S. § 1404, governs public information lists, generally. That section establishes the information contained in public information lists, the authority of the Secretary to promulgate regulations pertaining to access to the list, as well as information about copying the list. 25 Pa. C.S. § 1404(a)-(c). Section 183.14 of the Department's Regulations, 4 Pa. Code § 183.14, also governs public information lists. That section includes more specific information about the list's contents, availability, inspection and copying, fees, and provides a timeline for processing requests, as well as certain reasonable safeguards, which must be followed before access to the list will be granted.[11] 4 Pa. Code § 183.14(a)-(b) (establishing the information contained in the list, the time the list is available, and the contents of the Department's form), (h) (providing that access to the list may be disrupted occasionally), (i) (prescribing a timeline for processing requests and that "the Department . . . will distribute the

---

[11] The General Assembly also **explicitly** provided that certain types of voter registration information may not be disclosed. 25 Pa. C.S. § 1404(a)(3) (providing items "[t]he [public information] list may not contain"); 4 Pa. Code § 183.14(c)(1)-(6), (e)-(f) (designating certain information as confidential, specific categories of persons whose information may not be made available, and situations in which limited access to confidential information may be granted).

9

public information list . . . for a reasonable fee"), (j) (permitting the Department to "supply the . . . list in a paper copy or in an electronic format"), and (k) (providing that "[t]he list may not be published on the Internet").[12]

In the Voter Registration Act, the General Assembly established a comprehensive framework within which the Department is responsible for compiling, organizing, maintaining, and disseminating voter registration records. 25 Pa. C.S. § 1404; 4 Pa. Code § 183.14. These records include names, addresses, birth dates, party registration, and voting history. It is the Department that has been entrusted with the custody, control, and protection of voter registration information, and the Secretary of the Department who has been delegated the authority to develop reasonable safeguards in the form of regulations governing the public's access to that information. 25 Pa. C.S. § 1404(a)(1). The affidavit of Commissioner Marks[13] states the purposes for which voter registration information is made available, including "to assist candidates for public office in identifying constituents and carrying out campaign-related activities[, and to help p]olitical parties, candidates for public office, political campaigns, and special-interest groups use the information to identify constituents and carry out election-related activities." (R.R. at 67a.) He also explained that due to the "unique nature of the records, the General Assembly and the Department, . . . have imposed []

---

[12] See supra note 8 (providing sections of the RTKL regarding access to records that conflict with the Voter Registration Act and the Department's regulations) and other conflicting RTKL sections; Section 301(b) of the RTKL, 65 P.S. § 67.301(b) (regarding access to and the intended use of records); Section 704 of the RTKL, 65 P.S. § 67.704 (providing for electronic or paper access); Section 705 of the RTKL, 65 P.S. § 67.705 (governing the creation of records); and Section 1307 of the RTKL, 65 P.S. § 67.1307 (regarding fee limitations).

[13] Under the RTKL, unsworn attestations made subject to the penalties of perjury are considered competent evidence to sustain an agency's burden of proof. Moore v. Office of Open Records, 992 A.2d 907, 909 n.4 (Pa. Cmwlth. 2010).

reasonable safeguards to ensure that the information is not used improperly." (Id.) Commissioner Marks reiterated that those wishing to gain access to such information must abide by the reasonable safeguards set forth by the Department, as authorized by the General Assembly, including completing the Department's form, presenting proof of identification,[14] "stat[ing,] in writing [on a form prescribed by the Department] that any information obtained from the list will not be used for purposes unrelated to elections, political activities or law enforcement," and paying the reasonable $20.00 fee.[15] (R.R. at 67a); 25 Pa. C.S. § 1404(b)(3), (c)(1)-(2); 4 Pa. Code § 183.14(a), (b)(1)-(5).

We conclude that the RTKL provisions conflict with the access provisions of the Voter Registration Act and the Department's regulations, and therefore, the RTKL's access provisions do not apply to PFUR's request for voter registration

---

[14] PFUR maintains that "[a]s a corporation, [it] is a "person" under Pennsylvania law[,] and [is] thus a [] "[r]equester" under the RTKL." (PFUR's Br. at 23 (citations omitted).) Section 102 of the RTKL defines "[r]equester" as "[a] person that is a legal resident of the United States and requests a record pursuant to this act. The term includes an agency." 65 P.S. § 67.102. However, because of its corporate status and inability to produce photo identification, PFUR argues that it "cannot comply with the [Department's] prescribed form" to gain access to the requested records. (PFUR's Br. at 23-24.) We are unpersuaded by this argument and note that PFUR's president filled out an "affirmation" on behalf of PFUR when requesting the information under the RTKL. There is no evidence that PFUR's president is not similarly able to present proof of identification when requesting such records under the Voter Registration Act and the Department's regulations.

[15] PFUR argues that the permissible fee for the four voter records in Requested Item 3 is 25 cents per page, totaling $1, and that the Department is asking it to pay "twenty times that amount" for the full voter export the Department agreed to provide. (PFUR's Reply Br. at 24-25.) This has been the fee for the type of information requested here since 2006. (See Request for Voter Lists from the Department of State, R.R. at 28a (stating that "Effective July 12, 2006, the Full Voter Export is available for a charge of $20.00 for a request for any county or all counties in the Commonwealth of Pennsylvania).) We also note that PFUR agreed to pay up to $100 for the requested records. (R.R. at 23a-24a.) Therefore, we disagree that the $20.00 fee is unreasonable.

11

information. Moreover, the Department's regulations expressly establish the manner and medium in which the public information list may be made available for public inspection and copying to those who request access to it. See 25 Pa. C.S. § 1404(a)(1) (providing that "[a] commission shall provide for computer inquiries concerning individual registered electors"), (c)(1) (providing that "[t]he commission . . . may provide copies in some other form . . ."); 4 Pa. Code § 183.14(j) (providing that "[t]he Department . . . will supply the public information list in a paper copy **or in an electronic format**.") (emphasis added). Commissioner Marks also attested to the fact that PFUR would be able to access all the information it sought from the full voter export, or public information list, a fact that PFUR acknowledged at oral argument. Therefore, we conclude that PFUR was granted access to the requested voter registration information in accordance with the Voter Registration Act and the Department's regulations, and in a manner and medium in which the Voter Registration Act and the Department's regulations explicitly allow.[16]

## Conclusion

The Voter Registration Act and the Department's regulations comprehensively govern the accessibility of voter registration information in

---

[16] PFUR argues that under Section 704(b)(2) of the RTKL, 65 P.S. § 67.704(b)(2) (requiring agencies to provide printed copies of records to requesters "unwilling or unable to access [] record[s] electronically"), the Department must provide PFUR with printouts of the records requested. (PFUR's Br. at 21.) While this provision of the RTKL does not apply to PFUR's request, there is a similar provision applicable to requests under the Voter Registration Act. See Section 183.14(j) of the Department's regulations, which provides that "[t]he Department . . . will supply the public information list in a paper copy **or** in an electronic format." 4 Pa. Code § 183.14(j) (emphasis added). However, PFUR did not request a paper format.

12

Pennsylvania, and the RTKL expressly provides that it will not apply under such circumstances. Therefore, the Department may respond to requests for voter registration information under the RTKL by requiring requesters to comply with the Voter Registration Act and the Department's regulations. Accordingly, we affirm the OOR's Final Determination.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvanians for Union Reform,    :
                              Petitioner    :
                                       :

                    v.                :    No. 1852 C.D. 2015
                                       :

Pennsylvania Department of State,    :
                           Respondent    :

## O R D E R

**NOW**, May 23, 2016, the Final Determination of the Office of Open Records entered in the above-captioned matter is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge