# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gina Swoboda and Voter
Reference Foundation, LLC,
               Petitioners

v.

Pennsylvania Department of State
(Office of Open Records),
               Respondent

:
:
:   No.  857 C.D. 2022
:
:   Argued:  April 5, 2023
:
:
:
:


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE McCULLOUGH               FILED: October 20, 2023

Gina Swoboda and Voter Reference Foundation, LLC (collectively, Petitioners) petition for review of the July 15, 2022 Final Determination of the Office of Open Records (OOR), which affirmed the Pennsylvania Department of State's (Department) denial of Petitioners' request for records sought pursuant to the Right-to-Know Law[1] (RTKL) (Request). Upon review, we affirm.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant facts of this appeal are not in dispute. On March 7, 2022, Petitioners submitted the Request to the Department seeking a copy of the Full Voter Export List (List), otherwise known as the public information list, which includes all

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 - 67.3104.

the data in the public information lists compiled pursuant to Section 1404 of the Pennsylvania Voter Registration Act (Voter Registration Act),[2] for all counties in Pennsylvania. (Reproduced Record (R.R.) at 4A-5A.) The List includes the following information of registered Pennsylvania voters: voter identification number, name, sex, date of birth, date registered, voter status, date status last changed, party, residential address, mailing address, polling place, date last voted, all districts in which the voter votes, voter history, and the date the voter's record was last changed. (R.R. at 6A.) As set forth in the Request, Petitioners did not utilize the Pennsylvania voter services website[3] to obtain the List because the Department requires all requesters to sign an affirmation under penalties of 18 Pa. C.S. § 4904 (relating to unsworn falsifications to authorities by signing the request form) prior to its release of any records (Affirmation). The Affirmation states:

> I affirm that any information obtained from the records requested from the [Department] will not be used for commercial or other purposes, except purposes related to elections, political activities and law enforcement, as required by 25 Pa.C.S. [§§ ]1207(b) & 1404(c)(2). I further affirm that I will not publish any of the above lists on the Internet, as such publication is prohibited by 4 Pa. Code [§§ ]183.13(g) & 183.14(k).
>
> I verify that this statement is true and correct. I understand that false statements made are subject to the penalties of 18 Pa.C.S. [§ ]4904, relating to unsworn falsification to authorities.

---

[2] 25 Pa. C.S. §§ 1101-1906.

[3] The Department currently permits access to the List via its voter services website. (R.R. at 6A.) Once a requester fills out the Affirmation, the website provides a link to purchase the List for $20.00. *Id.* https://www.pavoterservices.pa.gov/pages/purchasepafullvoterexport.aspx (last visited October 19, 2023).

2

> By submitting this form[,] I understand that I am entering into an electronic transaction with the [Department] as defined under [Section 301(b) of the Uniform Electronic Transactions Act, Act of December 16, 1999, P.L. 971,] 73 P.S. [§ ]2260.301(b). By entering my name below[,] I am submitting my signature electronically, which I recognize has the full legal effect and enforceability as a "wet" signature under 73 P.S. [§ ]2260.301.

(R.R. at 7A.) Petitioners stated in the Request that it was submitted outside of the voter services website "because [Petitioners] cannot agree to certain statements in the 'Affirmation' required by the website." *Id.* Petitioners further stated that while they agree to the access restrictions of the List as required by Pennsylvania law, specifically that the List would only be used for purposes related to elections, political activities, and law enforcement, they disagree with the Department's regulation that prohibits publishing the List on the Internet. *Id.* As Petitioners noted in the Request, the same information sought is also available through the voter services website. *Id.*

On March 14, 2022, the Department notified Petitioners that a 30-day extension was necessary to respond to the Request. (R.R. at 12A-13A.) Thereafter, on April 13, 2022, the Department denied the Request. (R.R. at 14A-15A.) The Department stated that "[u]nder [S]ections 306 and 3101.1 of the RTKL, [65 P.S. §§ 67.306, 67.3101.1,] if another law addresses the public nature of a record or the manner of access to a record, the provisions of the other law prevail over the RTKL." (R.R. at 3A, 14A.) The Department stated that access to the List was governed by both the Voter Registration Act and Section 183.14 of the Department's regulations, 4 Pa. Code § 183.14, and that "records relating to voters, known as public information lists, are only available upon completion of an affirmation that the information will only be used for purposes relating to elections, political activities, and law enforcement." (R.R. at

3

3A, 15A.) Section 183.14(k) of the Department's regulations provides, in pertinent part, that "[t]he [public information] list cannot be published on the Internet." 4 Pa. Code § 183.14(k). The Department further stated that the Request could not be granted because, in a previous request, Petitioners were granted access to the List but violated the Affirmation by publishing the information on the Internet. *Id.* Petitioners noted in the Request that they would not sign the required Affirmation prohibiting recipients from publishing the voter lists on the Internet.[4] (R.R. at 7A.)

On May 4, 2022, Petitioners appealed the Department's decision to the OOR, challenging the Department's legal authority to control access to the List and claiming that the Department's regulations infringed on their right to political speech under the First Amendment of the United States Constitution. (R.R. at 16A-28A.) The OOR invited the parties to supplement the record. (R.R. at 42A.) On May 25, 2022, the Department timely submitted a statement in opposition arguing that Petitioners' appeal should be dismissed because access to the List is governed by the Voter Registration Act[5] and the Department's regulations, and that Petitioners' First

---

[4] Previously, Petitioners had violated that prohibition by posting the List on the Voter Reference Bureau's website. The Department's Chief Counsel wrote to Restoration Action, Inc., Petitioners' parent entity, to demand that Petitioners take the List down. (R.R. at 1A; Department's Br. at 6.) In the prior request, Petitioners had gained access to the List by agreeing to refrain from publishing the List on the Internet. (R.R. at 1A; Department's Br. at 6.)

[5] In relevant part, Section 1404(b) of the Voter Registration Act provides:
   (b) **Access.--**
         (1) The secretary may promulgate regulations governing access to the list.
         (2) No individual inspecting the list may tamper with or alter it.
         (3) No individual who inspects the list or who acquires names of registered electors from the list may use information contained in the list for purposes unrelated to elections, political activities or law enforcement. Before inspecting the list or obtaining names of registered electors or other

**(Footnote continued on next page…)**

4

Amendment arguments were outside the OOR's jurisdiction and should not be considered. (R.R. at 33A-36A.) Additionally, the Department submitted two attestations made under the penalty of perjury from Janelle Hawthorne, the Department's Open Records Officer, and Jonathan Marks, the Department's Deputy Secretary for Elections and Commissions.[6] (R.R. at 29A-32A.) Both Ms. Hawthorne and Deputy Secretary Marks attested that the information Petitioners sought under the RTKL was also available through the voter services website. (R.R. at 29A, 32A.) In her attestation, Ms. Hawthorne attested that she denied the Request for failure to abide by the Department's regulations regarding the publication of the List on the Internet. (R.R. at 31A-32A.) In his attestation, Deputy Secretary Marks attested that the Voter Registration Act empowered the Department to establish regulations for access to the List and the Department's regulations expressly prohibit the List to be published on the Internet. (R.R. at 29A-30A.) He explained the purposes for which voter records are conditionally made available to the public and their unique nature. (R.R. at 30A.) He further acknowledged that the Voter Registration Act directs the Department to promulgate regulations concerning access to the List, which "regulations are vital to protect the security of the information that the Department is entrusted to safeguard and to ensure that it is not used improperly." *Id.*

---

information from the list, the individual must provide identification to the public official having custody of the public information list and must state in writing that any information obtained from the list will not be used for purposes unrelated to elections, political activities or law enforcement.

25 Pa. C.S. § 1404(b).

[6] Under the RTKL, an agency may satisfy its burden of proof by providing unsworn attestations made subject to the penalties of perjury. *Moore v. Office of Open Records*, 992 A.2d 907, 909 n.4 (Pa. Cmwlth. 2010).

On June 9, 2022, the OOR dismissed Petitioners' appeal as untimely, to which Petitioners filed a Petition for Reconsideration. (R.R. at 37A-40A.) On June 15, 2022, the OOR found Petitioners' appeal was timely filed and, therefore, granted Petitioners' Petition for Reconsideration, vacated its June 9, 2022 Final Determination, and reopened Petitioners' appeal. (R.R. at 40A.) Subsequently, on July 15, 2022, the OOR issued its Final Determination denying Petitioners' appeal on the merits. (R.R. at 41A-48A.) The OOR found that the Voter Registration Act and the Department's corresponding regulations comprehensively govern access to the List. The OOR found that

> the Department has demonstrated that the [Petitioners] refuse[d] to comply with the provisions of the [Voter Registration Act], which [Petitioners] do[ ] not dispute. Accordingly, while the List may be accessible under certain circumstances, the [Voter Registration] Act supersedes the RTKL with respect to the List and access may only be obtained through the [Voter Registration Act].

(R.R. at 47A.) The OOR concluded that Petitioners failure to abide by these regulations was the proper justification for the Department to deny access to the List. *Id.* The OOR also found that it was not the proper forum to address Petitioners' First Amendment arguments. *Id.*

On August 15, 2022, Petitioners filed a petition for review with this Court.

## II.    ISSUES

On appeal,[7] Petitioners present three issues. First, Petitioners contend that the OOR erred in denying their appeal because, under the RTKL, there is no applicable

---

[7] Our standard of review of determinations made by OOR appeals officers under the RTKL is *de novo*, and our scope of review is plenary. *See Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

6

exemption to prevent the disclosure of the List. Second, Petitioners assert that Pennsylvania law does not prohibit the publishing of registered voter information on the Internet. Third, if such prohibition does exist, Petitioners argue that it violates the First Amendment and/or is preempted by the National Voter Registration Act[8] (NVRA). Petitioners ask this Court to reverse the OOR's decision, order the Department to provide the List without Petitioners having to agree to the prohibition of publishing the List on the Internet, and declare that the Department regulations, Sections 183.13(g) and 183.14(k), violate their rights under the First Amendment and are preempted by the NVRA. (Petitioners' Br. at 42.)

### III. DISCUSSION

**A. Whether the OOR Erred in Denying Petitioners' Appeal**

Because they are related, we address Petitioners' first two issues together. Petitioners assert that in denying their appeal, the OOR erred because, under Section 301(b) of the RTKL, 65 P.S. § 67.301(b), the Department cannot deny access to the List due to Petitioners' prior actions of posting the List on their website. Petitioners further assert that under the RTKL, the List is a public record available for inspection and that there is no applicable exemption of the RTKL that prohibits disclosing the List. Petitioners argue the OOR erred in determining the failure to comply with the Department's regulation was sufficient grounds to deny access to the List, and that the OOR erred in not addressing their constitutional and statutory issues.

At the outset, we note the language of Section 301(b) of the RTKL provides that "[a] Commonwealth agency may not deny a requester access to a public record due to the intended use of a public record by the requester **unless otherwise provided by law**." 65 P.S. § 67.301(b) (emphasis added). Section 1404(a)-(c) of the

---

[8] 52 U.S.C. §§ 20501-20511.

Voter Registration Act establishes the information contained in the List, also known as the public information list, as well as information about copying the List. 25 Pa. C.S. § 1404(a)-(c). Section 1404 of the Voter Registration Act establishes the authority of the Secretary of the Commonwealth to promulgate regulations pertaining to accessing and copying the List. Additionally, Section 183.14 of the Department's regulations governs "Public information lists," and provides additional information regarding the List's contents and procedural safeguards that must be followed before access to the List will be granted. 4 Pa. Code § 183.14. Specifically, Section 183.14(k) of the Department's regulations provides that "[t]he [L]ist may not be published on the Internet." 4 Pa. Code § 183.14(k).

As to the Petitioners' claim regarding use, the record is clear that the OOR did not deny access to the List based on Petitioners' proposed use of the List, but rather denied access based on Petitioners' refusal to comply with the Section 183.14(k) of the Department's regulations.[9] (R.R. at 41A-48A.)

Previously, this Court has ruled the RTKL does not apply to a request to the Department for voter information because access is comprehensively governed by the Voter Registration Act and the Department's accompanying regulations; therefore, access was "otherwise provided by law." *Pennsylvanians for Union Reform v.*

---

[9] To be clear, we do not conclude herein that the intended use of an otherwise public record may be considered by a public entity to determine whether the record must be disclosed under the RTKL. We consistently have stated that the intended use of a public record is irrelevant under the RTKL. *See, e.g.*, Section 302 of the RTKL, 65 P.S. § 67.302; *Hunsicker v. Pennsylvania State Police*, 93 A.3d 911, 913 (Pa. Cmwlth. 2014) (stating that "the reason for the request, good or bad, [is] irrelevant as to whether a document must be made accessible"). Rather, we conclude here that Section 183.14(k) of the Department's regulations prohibits publication of the List on the Internet after it is disclosed to a requester. Because Petitioners would not execute the Department's form Affirmation agreeing to not publish the List on the Internet, the Department did not disclose it. To the extent that Petitioners argue that the regulation therefore violates their First Amendment rights of association, they must challenge it on that ground using the appropriate legal framework.

*Pennsylvania Department of State*, 138 A.3d 727, 734 (Pa. Cmwlth.) (*PFUR*), *appeal denied*, 164 A.3d 462 (Pa. 2016). In *PFUR*, the requesters submitted the standard RTKL request form and affirmation to the Department. The requesters in *PFUR* argued that the Department's regulations were misapplied to their request because "the OOR cannot enforce stricter access provisions of another law or regulation." 138 A.3d at 730. There, we held that "[t]he Voter Registration Act and the Department's regulations **comprehensively govern the accessibility of voter registration information** in Pennsylvania, and the **RTKL expressly provides that it will not apply under such circumstances**." *Id.* at 734 (emphasis added). Thus, we concluded that the Department requires RTKL requesters to abide by both the Voter Registration Act and the Department's regulations for access to voter registration information. *Id.*

Here, as in *PFUR*, the Voter Registration Act preempts the RTKL. Specifically, Deputy Secretary Marks attested that although the Voter Registration Act provides for the public inspection of voter registration information, it restricts who can view the List and for what purposes the List can be used. (R.R. at 30A.) Section 183.14 of the Department's regulations provides that the public information list can only be used for "elections, political activities or law enforcement." (R.R. at 29A.) Deputy Secretary Marks further noted that those requesting access to the List must abide by the Department's regulations and

> state in writing on the form prescribed by the Department that they "affirm that any information obtained from records requested from the [Department] will not be used for commercial or other purposes, except purposes related to elections, political activities and law enforcement, as required by 25 Pa. C.S. [§§ ]1207(b) & 1404(c)(2)." They also further affirm that they "will not publish any of the above lists on the Internet, as such publication is prohibited by 4 Pa. Code [§§ ]183.13(g) & 183.14(k)." Finally, they must verify that their

9

> statement is true and correct and note that false statements made will be subject to the penalties of 18 Pa. C.S. [§ ]4904, relating to unsworn falsification to authorities. **The regulations require the form to be signed before any records can be released**.

(R.R. at 30A) (emphasis added). Deputy Secretary Marks attested that Petitioners' RTKL Request was denied because they refused to comply with the Department's regulation requiring a signed Affirmation.

Accordingly, our holding in *PFUR* compels us to conclude that the Voter Registration Act preempts the RTKL, and, as such, the Department properly denied access to the List because Petitioners refused to execute the Department's required Affirmation. In accord with precedent, we must conclude that the OOR did not err in denying Petitioners' appeal. This should end our inquiry. However, Petitioners have also sought relief in the form of a declaratory judgment, which we now address.

## B. Petitioners' NVRA and First Amendment Arguments

In the alternative, Petitioners argue that should the Court find that the Department's regulations bar publishing the List on the Internet, those provisions are preempted by the NVRA and violate the First Amendment.[10] Correspondingly, Petitioners request that this Court declare the Department's regulations unconstitutional. (Petitioners' Br. at 42.)

On appeal to this Court, Petitioners argue for the first time that the NVRA preempts Pennsylvania law. The Department points out that Petitioners did not raise their NVRA argument in their initial Request or before the OOR. (Department's Br. at 23.) We agree and note that a requester cannot modify his original request on appeal

---

[10] The OOR did not address Petitioners' constitutional challenges as it concluded that it was not the proper forum to do so. (R.R. at 47A.)

to the OOR or this Court. *Department of Corrections v. Disability Rights Network of Pennsylvania*, 35 A.3d 830, 833 (Pa. Cmwlth. 2012). We, therefore, conclude that Petitioners' NVRA argument is waived and cannot be considered for the first time on appeal to this Court.[11]

We next turn to Petitioners' argument that the Department's regulation, Section 183.14(k), is unconstitutional because it limits their political speech in direct violation of their First Amendment rights.[12] Section 183.14(k) of the Department's regulations states: "[the List] may not be published on the Internet." 4 Pa. Code § 183.14(k). Petitioners claim this restriction on publication is unconstitutional because it restricts their political speech and request that this Court declare it as such via their RTKL Request. There are several problems with Petitioners' request for declaratory relief in this context.

The scope of review in RTKL cases is to determine: (1) whether a requested record is a "public record," and (2) whether the requested record is subject to disclosure or is otherwise governed by a federal or state law. *Office of Governor v. Bari*, 20 A.3d 634, 640 (Pa. Cmwlth. 2011). Section 3101.1 of the RTKL, titled "Relation to other laws," provides that **"[i]f the provisions of [the RTKL] regarding access to records conflict with any other [f]ederal or [s]tate law, the provisions of [the RTKL] shall not apply."** 65 P.S. § 67.3101.1 (emphasis added). This Court has frequently interpreted Pennsylvania and federal laws to determine whether a requested record is disclosable under the RTKL. However, this Court has never used the RTKL

---

[11] Additionally, we note that the NVRA has its own separate procedure and enforcement provisions to provide redress for a violation. *See* 52 U.S.C. § 20510.

[12] We note that we only address 4 Pa. Code § 183.14(k) of the Department's regulations because this is the only section applicable to Petitioners' Request as Petitioners seek access to the public information list. *See* 25 Pa. C.S. § 1404(a)(1); 4 Pa. Code § 183.14(k).

11

as a vehicle to declare any law unconstitutional as Petitioners are requesting us to do in this RTKL appeal. *See, e.g.*, *Central Dauphin School District v. Hawkins*, 253 A.3d 820 (Pa. Cmwlth. 2021) (interpreting the Federal Family Educational Rights and Privacy Act[13] to determine if records were exempt from disclosure under the RTKL); *Ali v. Philadelphia City Planning Commission*, 125 A.3d 92 (Pa. Cmwlth. 2015) (interpreting provisions of the Federal Copyright Act[14] which limited access to records to inspection only in a RTKL matter); *Pennsylvanians for Union Reform v. Pennsylvania Office of Administration*, 129 A.3d 1246 (Pa. Cmwlth. 2015) (*PFUR v. POA*); *Department of Public Welfare v. Eiseman*, 85 A.3d 1117 (Pa. Cmwlth. 2014) (determining whether the Pennsylvania Uniform Trade Secrets Act[15] required disclosure of the requested records under the RTKL).

In *PFUR v. POA*, petitioners sought disclosure of one Commonwealth employee's payroll deductions for political action committee contributions. We held that disclosure would violate his reasonable expectation of individual associational rights under the First Amendment. We also stated that "**[i]f the RTKL were deemed by this Court to override the [Pennsylvania] Election Code,**[16] **the General Assembly's purpose would be subverted**." *Id.* at 1261. Importantly, we were **not** asked in *PFUR v. POA* to declare a separate Pennsylvania or federal law unconstitutional because that law either precluded or required disclosure under the RTKL. We merely applied the RTKL and held that a federal law, namely, the First

---

[13] 20 U.S.C. § 1232g.

[14] 17 U.S.C. §§ 101-1401.

[15] 12 Pa. C.S. §§ 5301-5308.

[16] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

Amendment, precluded disclosure under the RTKL because such disclosure would violate the constitutional rights of association of a Commonwealth employee (not the requester).

Critically, there is a difference between determining whether disclosure of personal information under the RTKL violates an individual's constitutional rights versus declaring a separate statute or regulation unconstitutional, as Petitioners are asking us to do here. This Court is unaware of any case where we have permitted a collateral inquiry into the constitutionality of any Pennsylvania or federal laws in a RTKL case.[17] That is because Petitioners' request for this Court to declare Section 183.14(k) of the Department's regulations unconstitutional is, in actuality, a request for a declaratory judgment, which is the appropriate mechanism for challenging and declaring a law unconstitutional. The purpose of the Declaratory Judgments Act[18] "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations," including whether certain statutes or regulations promulgated in the Commonwealth are constitutional. 42 Pa. C.S. § 7541(a). For example, this Court has commonly considered declaratory judgment actions in our original jurisdiction. *See, e.g.*, *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205 (Pa. Cmwlth. 2018); *Keystone ReLeaf, LLC v. Pennsylvania Department of Health*, 186 A.3d 505 (Pa. Cmwlth. 2018); *Ramos v. Allentown Education Association* (Pa. Cmwlth., No. 150 M.D. 2016, filed December 21, 2016); *Singer v. Sheppard*, 381 A.2d 1007 (Pa. Cmwlth. 1978).

---

[17] Quite obviously, we have no ability to declare federal legislation or regulations unconstitutional, whether pursuant to the RTKL or in any other context. This only further illustrates the critical distinction between *applying* state and federal laws to a RTKL request and *declaring* such laws unconstitutional via a RTKL request. We routinely do the former; we have never, and may not, do the latter.

[18] 42 Pa. C.S. §§ 7531-7541.

In sum, Petitioners are attempting to do an end run around the Department's regulations by asking this Court to exceed our review under the RTKL and declare Section 183.14(k) of the Department's regulations unconstitutional. There is no dispute here that the List is a public record and would otherwise be disclosable under the RTKL but for Section 183.14(k), which permits disclosure of the List with the restriction that it cannot be published on the Internet. Petitioners have refused to comply with that restriction, and, therefore, Section 183.14(k) precludes them from accessing the List under Section 3101.1 of the RTKL. Our analysis ends here.

The General Assembly did not intend for this Court to take the drastic and unwarranted additional step of considering in a RTKL appeal whether prevailing laws that restrict disclosure are themselves unconstitutional and, if so, categorically enter a declaratory judgment against them. Simply, the RTKL is not designed for that kind of challenge, and Petitioners' suggestion that we consider it here is misplaced.[19]

---

[19] Even if we were to determine that Petitioners' First Amendment claims properly could be considered in this appeal, which they cannot, we would in any event conclude that they lack merit. Petitioners assert that Section 183.14(k) of the regulations is unconstitutional because it restricts their political speech in violation of the First Amendment. In support, they assert that the List is "inherently political" and "a tool for political speech and association." (Petitioners' Br. at 29, 32.) However, this bald assertion is far too conclusory and, therefore, insufficient to establish that Petitioners have a right that warrants First Amendment protections or our immediate review.

> The United States Supreme Court has defined core political speech as involving the "'interchange of ideas for the bringing about of political and social changes desired by the people.'" *Meyer v. Grant*, 486 U.S. 414, 421 [] (1988) (quoting *Roth v. U.S.*, 354 U.S. 476, 484 [] (1957)); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 269 [] (1964). Political speech includes "discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." *Mills v. Alabama*, 384 U.S. 214, 218-19 [] (1966). The Supreme Court has also described political speech as "interactive communication concerning political change." *Meyer*, 486 U.S. at 422[].

**(Footnote continued on next page…)**

14

. . . There are many examples of the Court upholding several different forms of political speech, including political speech made by corporations, public policy discussions, derogatory comments about the government, speech in the context of political campaigns, and even defamatory speech about public officials or matters of public concern. *See Citizens United [v. Federal Election Commission*, 558 U.S. [310,] 365 [] (2010) (holding that "the Government may not suppress political speech on the basis of the speaker's corporate identity"); *Consol[idated] Edison Co. of New York, Inc. v. Pub[lic] Serv[ice] Comm[ission] of New York*, 447 U.S. 530, 544 [] (1980) (striking down a regulation prohibiting utility companies from placing inserts into customer bills discussing public policy); *Cohen v. California*, 403 U.S. 15, 26 [] (1971) (reversing a conviction for speaking a four-letter expletive critical of the draft); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 [] (1971) (protecting speech in the context of campaigns for political office); *New York Times*, 376 U.S. at 283 [] (protecting defamatory falsehoods made against public officials unless proven statement was made with actual malice).

*Kuwait & Gulf Link Transport Company v. Doe*, 92 A.3d 41, 46-47 (Pa. Super. 2014). *See also, Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 385 (Pa. 2020) (poll watching "does not implicate core political speech"); *Republican Party of Pennsylvania v. Cortes*, 218 F. Supp. 3d 396, 415 (E.D. Pa. 2016) (content of poll watcher's speech cannot be characterized as political speech because when a poll watcher reports incidents of potential violations of the Election Code during the conduct of an election, he neither facilitates public discussion of a political issue nor advocates for a particular candidate, issue, or viewpoint).

In *Kuwait*, a "Scott Wilson" (a/k/a John Doe) wrote letters (the Wilson Letters) to two government agencies responsible for the operation of the United States military to inform them that he believed that Kuwait & Gulf Link Transport Co., KGL Logistics, and KGL Transportation Co. K.S.C.C., a government contractor, maintained business relationships with Iranian entities in violation of the Comprehensive Iran Sanctions, Accountability, and Divestment Act. KGL then filed suit against a competitor, Agility, and Scott Wilson alleging, *inter alia*, liability for defamation. During discovery, Agility objected to requests that sought to identify "Scott Wilson" based on its First Amendment right to speak anonymously and pseudonymously. Now Justice Donohue, writing for the Superior Court, explained that the Wilson Letters constituted political speech "because the award of substantial government contracts to contractors who are claimed to illegally engage in business with a prohibited foreign government directly implicates the manner in which government is operated or should be operated." *Id.* at 49. The Superior Court also concluded that the Wilson Letters "discussed affairs of government, which are at the heart of First Amendment protection" and that they represent political speech involving the operation of the government and the questionable expenditure of public funds. That court also concluded that the Wilson Letters directly implicated the

**(Footnote continued on next page…)**

15

## IV. CONCLUSION

Because we conclude that the OOR did not err in denying Petitioners' RTKL appeal and that Petitioners' NVRA argument was waived and their First Amendment claims are not reviewable by this Court, we affirm the OOR's Final Determination.

_____
PATRICIA A. McCULLOUGH, Judge

President Judge Cohn Jubelirer, Judge Covey, and Judge Wallace concur in the result only.

---

appropriateness of the relationship between the United States Government and some of its contractors and those contractors' relationships with a foreign government in conflict with the United States. *Id.* at 49-50.

Contrary to the above, Petitioners do not explain exactly how the regulation's prohibition against publishing the List on the Internet infringes on their right to political expression. Petitioners set forth no facts whatsoever that explain how publication of the List on the Internet would further their right to engage in political speech, *i.e.*, how they have been prevented, due to the regulation, from discussing political candidates, structures or forms of government, the manner in which government is operated or should be operated, the expenditure of public funds, or political change. *Kuwait.* Essentially, they ask us, based on a single conclusory statement, to **assume** that the regulation infringes on their First Amendment rights. However, without more, we are unable, and unwilling, to make that leap.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gina Swoboda and Voter      :
Reference Foundation, LLC,      :
         Petitioners      :
              :
         v.      :    No.   857 C.D. 2022
              :
Pennsylvania Department of State      :
(Office of Open Records),      :
         Respondent      :

## ***ORDER***

AND NOW, this 20th day of October, 2023, the Office of Open Records' July 15, 2022 Final Determination is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge